UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CLIVE MCGEACHY,                                    :

                    Petitioner,          :          **<u>MEMORANDUM DECISION</u>**

             - v -                         :          11-cv-3906 (DC)

ADA PEREZ, Superintendent of                       :
Downstate Correctional Facility,

                            :

                    Respondent.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:          BELDOCK LEVINE & HOFFMAN LLP
                    By:    Luna Droubi, Esq.
                    99 Park Avenue
                    New York, NY 10016
                        Attorneys for Petitioner

                    CHARLES J. HYNES, Esq.
                    District Attorney
                    Kings County
                    By:    Diane R. Eisner, Esq.
                        Assistant District Attorney
                    350 Jay Street
                    Brooklyn, NY 11201
                        Attorney for Respondent

CHIN, Circuit Judge:

          On October 21, 2008, following a jury trial, the Supreme Court of the State

of New York, Kings County (Firetog, *J.*), entered judgment convicting petitioner Clive

McGeachy of one count of first-degree manslaughter and sentencing him to fifteen

years of imprisonment and five years of post-release supervision.  *See* Dkt. 7-2 at 42.

His convictions were affirmed by the Appellate Division, Second Department, *People v. McGeachy*, 902 N.Y.S.2d 186 (2d Dep't 2010).

On August 12, 2011, McGeachy petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  *See* Dkt. 1.  McGeachy argues that (1) the evidence of his guilt of first-degree manslaughter was legally insufficient; (2) the trial court's failure to submit to the jury the lesser-included count of criminally negligent homicide denied him a fair trial; (3) the trial court's decision to limit his cross-examination of three key witnesses denied him his right to confrontation; (4) the trial court's denial of his request for a *Franks* hearing to challenge the truthfulness of statements relied on to obtain a search warrant denied him due process; and (5) the introduction of highly prejudicial and irrelevant evidence before the grand jury denied him a fair proceeding. *See* Dkt. 1 at 5-8, 15-17; Dkt. 2 at 13-15.

For the reasons set forth below, McGeachy's petition is denied.

## BACKGROUND

**I.      Facts**

The evidence at trial, viewed in the light most favorable to the prosecution, established the following:

On the night of December 21, 2006, McGeachy had a violent argument with his girlfriend, Natasha Franklin, after which Natasha went home, emotionally

2

shaken and with marks on her neck.  Natasha told her mother, Barbara Franklin, what

happened.  Barbara was very upset by how Natasha had been treated, and hoping for

an explanation from McGeachy, she left for his nearby business premises at 195 Buffalo

Avenue in Brooklyn.  Natasha and Llewellyn Barrino, Barbara's husband, followed.  *See*

Dkt. 8-1 at 106-18; Dkt. 8-2 at 96-100.

Outside the gate to McGeachy's property, Barbara demanded to know

why McGeachy had hit Natasha.  McGeachy first denied hitting Natasha, but then

admitted that he "hit the bitch" and that he would "do it again."  McGeachy approached

the gate, holding a pipe, abruptly dropped it, and then walked back towards a shed at

the rear of his property.  *See* Dkt. 8-1 at 121-123; 125-27; 129; Dkt. 8-2 at 100-02.

Thinking the confrontation was over, Natasha, Barbara, and Barrino began

walking away from the gate.  McGeachy quickly returned, now stepping beyond his

gate onto the sidewalk and holding a handgun.  *See* Dkt. 8-1 at 130-31; Dkt. 8-2 at 104-

06.  McGeachy started towards Barbara and yelled, "Now what.  Now what.  Who

wants some of this?  Who wants some of this?"  Dkt. 8-2 at 2.  As Natasha stepped

towards Barbara in her defense, McGeachy pushed Natasha out of his way and grabbed

Barrino by his jacket collar.  McGeachy raised the gun, pistol-whipped Barrino in the

face several times, and then abruptly shot Barrino in the side of his chest.  McGeachy

fled the scene as Barrino, almost immediately, died from the gunshot wound.  *Id.* at 107-

3

12.  Walter Frazier, who happened to be walking on Buffalo Avenue, observed most of the incident.  *See* Dkt. 8-4 at 102-05; 125-27.

Detective Perez, who was among the responding police officers, spoke with Frazier at the scene of the incident.  *See* Dkt. 8-3 at 70-71.  Frazier informed Detective Perez that he saw McGeachy run back into his property after the shooting and before fleeing.  *See* Dkt. 8-4 at 127-28.  Detective Perez then entered McGeachy's business premises through the open gate and looked into the unlocked shed to search for McGeachy.  *See* Dkt. 8-3 at 75.  Finding no persons in the shed but noticing an open bag containing weapons and ammunition in plain view, Detective Perez submitted an affidavit in support of a request for a search warrant of McGeachy's business premises, which included his own observations in addition to statements from Frazier.  *See* Dkt. 7-2 at 88.  On December 22, 2006, the warrant was issued and Detective Jennifer Bille executed a search of the shed, seizing the bag with numerous rounds of ammunition, one loaded .40 caliber handgun, and one sawed-off rifle.  *See* Dkt. 9-2 at 36.

On December 27, 2006, after contacting counsel, McGeachy turned himself in to the police.  *See* Dkt. 8-3 at 124.  McGeachy was arrested following lineups at which he was identified as Barrino's killer by Natasha, Barbara, and Frazier.  *Id.* at 100, 125.

## II.       Procedural History

### a.       *State Court Proceedings*

On January 19, 2007, the grand jury indicted McGeachy for one count of

second-degree murder and two counts of second-degree criminal possession of a

weapon.  *See* Dkt. 7-1 at 17.

On May 28, 2008, the People moved in *limine* for an order allowing

evidence of the weapons and ammunition seized from McGeachy's shed to be admitted

on its direct case.  *Id.*  On June 12, 2008, McGeachy moved for a *Franks* hearing to contest

the legality of the search of his property, asserting that Detective Perez entered the shed

without probable cause, improperly searched the premises, and then applied for a

search warrant.  *Id.* at 18; Dkt. 7-2 at 89.  In support of the search warrant application,

Detective Perez included a statement from Frazier that he saw McGeachy run back into

his property before fleeing.  McGeachy argued that grand jury testimony from Barbara

and Natasha contradicted Frazier's statement, suggesting that the search warrant was

issued in reliance, at least in part, on false statements.  The trial court denied

McGeachy's motion for a hearing, concluding that the affidavit was sufficient on its

face, but agreed to let McGeachy renew his application after questioning the witnesses.

*See* Dkt. 7-2 at 88-89.

At trial, Barbara, Natasha, and Frazier testified about the shooting of

Barrino.  In the People's direct case, the jury was not shown the guns and ammunition

seized from McGeachy's shed, but the evidence was admitted in the People's rebuttal

case for purposes of cross-examination.  *See* Dkt. 9-2 at 35-36.  The parties stipulated that

a knife was found in Barrino's rear waistband area of his pants.  *Id.* at 28.

McGeachy testified in his own defense and recounted a different version

of events.  McGeachy testified that he heard shouts outside his gate and became

concerned for his safety and decided to bring a gun outside with him.  The gun was in

McGeachy's shed, but McGeachy testified that it did not belong to him, and that he did

not know whether it was loaded when he decided to take it outside with him.  Dkt. 9-1

at 69-72.  McGeachy testified that he grew "extremely angry" by the confrontation with

Barbara, Natasha, and Barrino, and that he felt that he needed to "protect" himself.  *Id.*

at 105-06.  McGeachy believed that Barrino might be concealing a weapon because

Barrino had his hands in his pockets.  *Id.* at 110-11.  McGeachy testified that he did not

intentionally put his finger on the trigger and that he waved the gun only to scare

everyone into leaving him alone.  McGeachy claimed that Barrino punched him in the

shoulder, and that because McGeachy thought that Barrino might be stabbing him, he

swung at Barrino with the gun several times, and then suddenly heard a "pop."  *Id.* at

110-113; 117-20.  Because McGeachy believed that his gun was empty, he first thought

that Barrino had fired a shot at him, and McGeachy began to run inside.  *Id.* at 125, 129.

Once McGeachy considered the possibility that he actually shot Barrino, he became

frightened and fled the scene, disposing of his gun in a dumpster at a construction site. *Id.* at 129; Dkt. 9-2 at 6.

Four counts were submitted to the jury:  second-degree murder, the lesser-included counts of first- and second-degree manslaughter, and second-degree criminal possession of a weapon.  The trial court declined to instruct the jury on the charge of criminally negligent homicide.  McGeachy was acquitted of second-degree murder but convicted of first-degree manslaughter.  *See* Dkt. 7-2 at 68.

Represented by counsel, McGeachy appealed to the Appellate Division, Second Department.  He raised, *inter alia*, five claims:  (1) the trial court should have submitted criminally negligent homicide to the jury as a lesser-included offense of the murder charge; (2) the evidence supporting his first-degree manslaughter conviction was legally insufficient; (3) the trial court erred in denying, without an evidentiary hearing, his motion challenging the search warrant used to seize the guns and ammunition from his work shed; (4) the trial court abused its discretion by (a) denying his request to cross-examine Barbara and Natasha about Barrino's knife and (b) allowing cross-examination of Frazier without his psychiatric records; and (5) the indictment should be dismissed because of prosecutorial misconduct before the grand jury.  *See* Dkt. 7 at 10-11.

By decision dated June 8, 2010, the Appellate Division affirmed McGeachy's conviction.  *See McGeachy*, 902 N.Y.S.2d at 187.  The Appellate Division

held that McGeachy's claim that the trial court erred by failing to submit a charge of criminally negligent homicide to the jury as a lesser-included offense of second-degree murder was "foreclosed by the jury's verdict finding him guilty of manslaughter in the first degree, and its implicit rejection of the lesser-included offense of manslaughter in the second degree which had been submitted to it." *Id.* The Appellate Division found that McGeachy's challenge to the legally sufficiency of the evidence was unpreserved for appellate review, *id.* (citing, *inter alia*, N.Y. C.P.L. § 470.05 (contemporaneous objection rule)), but that the claim was in any event meritless because the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt," *id.* The Appellate Division also held that the trial court properly denied, without a hearing, McGeachy's motion to challenge the search warrant because McGeachy "failed to make the necessary substantial preliminary showing that the warrant was based upon an affidavit containing false statements made knowingly or intentionally, or with reckless disregard for the truth." *Id.* at 187-88. Finally, the Appellate Division found that McGeachy's remaining contentions were meritless. *Id.* at 188.

Leave to appeal to the New York Court of Appeals was denied on September 7, 2010. *See People v. McGeachy*, 935 N.E.2d 823 (N.Y. 2010) (Ciparick, *J.*).

### b.   *Proceedings Below*

McGeachy filed this habeas petition in the Eastern District of New York, represented by the same counsel and raising most of the same claims raised before the

Appellate Division.  *See* Dkt. 2 at 13-15.  On August 24, 2011, the Court granted the

Kings County District Attorney's Office an extension of time to file a response to

McGeachy's petition.  *See* Dkt. 4.  On November 9, 2011, the State timely filed its

opposition.  *See* Dkt. 7, 8, 9.  On January 17, 2012, McGeachy timely filed his reply to the

opposition.  *See* Dkt. 11.  Inexplicably, McGeachy's fully briefed petition remained

pending for the next eleven years.  On January 17, 2023, the case was reassigned to the

undersigned.

## *DISCUSSION*

### I.      Federal Review of State Convictions

A federal court may not grant a habeas petition on a claim that was

adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d); *see Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017); *Harrington v.*

*Richter*, 562 U.S. 86, 97-98 (2011).  Hence, when a claim is adjudicated on the merits, the

state court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780

F.3d 556, 560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only

where it was 'so lacking in justification that there was . . . [no] possibility for fairminded

disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012).

When considering a sufficiency argument on habeas review, "[a] federal court must look to state law to determine the elements of the crime." *Fama v. Comm'r Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (citation omitted).  A federal court "must consider whether, as a matter of federal law, there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law." *Einaugler v. Supreme Court of New York*, 109 F.3d 836, 839 (2d Cir. 1997) (citations omitted).  The reviewing court "must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." *Fama*, 235 F.2d at 811 (citation omitted).  A "petitioner bears a very heavy burden in convincing a federal *habeas* court to grant a petition on the grounds of insufficiency of the evidence." *Id*. (citation omitted).  Indeed, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

Next, claims of a state court's failure to charge the jury on lesser-included offenses in noncapital cases is not cognizable in a habeas corpus proceeding in federal court.  *See Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996).  "A jury charge in a state trial is

normally a matter of state law and is not reviewable on federal habeas corpus absent a

showing that the alleged errors were so serious as to deprive defendant of a federal

constitutional right."  *U. S. ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir. 1974)

(citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) ("Before a federal court may overturn a

conviction resulting from a state trial in which this instruction was used, it must be

established not merely that the instruction is undesirable, erroneous, or even

'universally condemned,' but that it violated some right which was guaranteed . . . by

the Fourteenth Amendment.")).  Thus, where, a petitioner argues that failing to charge

the jury violates his due process rights, we consider whether (1) "petitioner was

erroneously deprived of a jury instruction to which he was entitled under state law,"

*Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001), and, if so, whether (2) the failure to give

such a charge "so infected the entire trial that [petitioner's] resulting conviction violates

due process," *Cupp*, 414 U.S. at 147.

    Similarly, purported evidentiary errors, including limitations on cross-

examination, are rarely a basis for habeas relief.  The Supreme Court has acknowledged

its "traditional reluctance to impose constitutional constraints on ordinary evidentiary

rulings by state trial courts."  *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  "[T]rial judges

retain wide latitude insofar as the Confrontation Clause is concerned to impose

reasonable limits on such cross-examination based on concerns about, among other

things, harassment, prejudice, confusion of the issues, the witness' safety, or

interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Consequently, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus.  Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (citations omitted).  An erroneous evidentiary ruling constitutes a denial of due process "only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed in the record without it.'" *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (citation omitted). And, even if a limitation on cross-examination is indeed erroneous, such an error does not warrant habeas relief if it is harmless, which is determined by considering:  "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684 (1986); *see also Brinson v. Walker*, 547 F.3d 387, 396 (2d Cir. 2008) ("At least as important as the five factors . . . in *Van Arsdall* is whether the cross-examination of which the defendant was deprived was of a nature that was likely to affect the result.").

As for a petitioner's claims under the Fourth Amendment, "where the State has provided an opportunity for full and fair litigation of [the] claim, the

Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976).  Thus, a petitioner may obtain habeas review of Fourth Amendment claims only if he either establishes that "'the state has provided no corrective procedures at all to redress the alleged fourth amendment violations,' or, 'if the state has provided a corrective mechanism,' that the petitioner 'was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Ethridge v. Bell*, 49 F.4th 674, 684 (2d Cir. 2022) (citing *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)).  To establish such a breakdown, the petitioner would have to prove that "the state system 'failed to conduct a reasoned method of inquiry into relevant questions of fact and law.'" *Hicks v. Bellnier*, 43 F. Supp. 3d 214, 231 (E.D.N.Y. 2014) (citing *Capellan*, 975 F.2d at 71).

   Generally, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citations omitted).  The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that the state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103, 104

13

(2d Cir. 2011) (citations omitted).  Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review.  *See, e.g.*, *Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming denial of habeas relief where petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal).

Finally, claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court.  *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989); *United States v. Mechanik*, 475 U.S. 66, 106 (1986).

## II.      Analysis

McGeachy raises five claims in his habeas petition:  (1) the sufficiency of the evidence with respect to his first-degree manslaughter conviction; (2) the trial judge's failure to submit to the jury the lesser-included count of criminally negligent homicide; (3) the trial judge's decision to limit his cross-examination of three key witnesses; (4) the trial judge's denial of his request for a *Franks* hearing to challenge the truthfulness of statements relied on to obtain a search warrant; and (5) the prosecutor's misconduct before the grand jury.  *See* Dkt. 2 at 4-6.  I address each claim in turn.

### a.      The Sufficiency of the Evidence

The Appellate Division held that McGeachy's challenge to the legal sufficiency of the evidence was unpreserved for appellate review, citing C.P.L. § 470.05,

but that viewing the evidence in the light most favorable to the prosecution, the evidence "was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *McGeachy*, 902 N.Y.S.2d at 187.

The Appellate Division's determination that the claim was unpreserved for appellate review constitutes an independent and adequate ground for its decision, and thus the claim cannot be a basis for habeas review.  *See, e.g.*, *Downs*, 657 F.3d at 103, 104; *Garcia*, 188 F.3d at 81-82; *see also People v. Jean*, 987 N.Y.S.2d 630, 631 (2d Dep't 2014) ("The defendant's contentions that the People improperly used his pretrial silence to impeach his credibility at trial and made improper summation comments regarding his pretrial silence are unpreserved for appellate review." (citing C.P.L. § 470.05[2] and other New York cases)).

Even if McGeachy's sufficiency claim provided a basis for habeas review, the Appellate Division's review of McGeachy's sufficiency claim on the merits is a decision that must be accorded "substantial deference."  *Fischer*, 780 F.3d at 560. Moreover, it cannot be said that the Appellate Division's conclusion on the merits was "objectively unreasonable."  *Coleman*, 566 U.S. at 651.  Under New York law, a person is guilty of manslaughter in the first degree when "[w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person."  N.Y. Penal Law § 125.20 (McKinney).  Viewing the evidence presented at trial in the light

most favorable to the prosecution, it is clear that a rational jury "could have found the essential elements of th[is] crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

Although McGeachy testified that shooting Barrino was accidental because he did not believe the gun was loaded, the jury was free to reject McGeachy's argument and credit, instead, the contradictory testimony of the People's eyewitnesses -- Barbara, Natasha, and Frazier. *See Rustici v. Philips*, 497 F. Supp. 2d 452, 473 (E.D.N.Y. 2007), *aff'd sub nom. Rustici v. Phillips*, 308 F. App'x 467 (2d Cir. 2009) ("The defense did argue to the jury that the discharge of the gun was an accident. The jury was free to reject this argument, and with reasonable certainty [it] did, because it was based entirely on the petitioner's own statements and it conflicted with other evidence in the record."). All three witnesses -- and McGeachy himself -- testified that McGeachy engaged in an angry confrontation while standing safely behind the closed gate to his property; that McGeachy eventually approached Barbara, Natasha, and Barrino, armed with a handgun; and that McGeachy pistol-whipped Barrino in the face several times before abruptly shooting Barrino in the side of his chest. Hence, in viewing the evidence in the light most favorable to the prosecution, as this Court is required to do, *see Fama*, 235 F.2d at 811, a rational jury could have found beyond a reasonable doubt that McGeachy intended to cause Barrino serious physical injury.

Accordingly, McGeachy's sufficiency of the evidence claim fails.

### b.    The Lesser-Included Offense of Criminally Negligent Homicide

As to the trial court's denial of McGeachy's request to submit to the jury the lesser-included offense of criminally negligent homicide, this claims also fails to provide a basis for habeas relief.  Both the Supreme Court and the Second Circuit have expressly refrained from deciding whether the Constitution requires jury instructions for lesser-included offenses in non-capital cases.  *See Beck v. Alabama*, 447 U.S. 625, 638 n. 14 (1980); *Jones*, 86 F.3d at 48.  Nonetheless, this Court is precluded from considering the issue because "a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new rule," *Jones*, 86 F.3d at 48, and federal courts are precluded from announcing new rules of constitutional interpretation in habeas corpus cases, *see Teague v. Lane*, 489 U.S. 288, 315 (1989).  Thus, McGeachy's claim that the trial court erred in refusing to charge the jury with the lesser-included offense of criminally negligent homicide is not cognizable on habeas review.

In any event, even if the Court were not precluded from reviewing McGeachy's lesser-included offense claim, it is without merit.  McGeachy has failed to show that he was entitled to a jury charge for criminally negligent homicide as a matter of New York state law.  *See Davis*, 270 F.3d at 123.  Under New York law, to establish entitlement to a lesser-included offense charge, a defendant must show that "in theory, the charged, greater crime could not be committed without the lesser offense also being

committed and, additionally, that in the particular case the jury would be warranted in finding that the defendant committed the lesser but not the greater crime." *People v. Glover*, 439 N.E.2d 376, 377 (N.Y. 1982). To warrant a criminally negligent homicide charge, the evidence, when viewed in the light most favorable to McGeachy, must have supported the reasonable view that McGeachy "fail[ed] to perceive a substantial and unjustifiable risk" that he would cause the death of another person, and "that the failure to perceive [the risk] constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." N.Y. Penal Law §§ 15.05(4), 125.10 (McKinney).

McGeachy fails both requirements of *Glover*. A person who acts with intent to cause, or while aware of and consciously disregarding a risk of causing, serious physical injury cannot simultaneously fail to perceive that risk. *See People v. Fernandez*, 879 N.Y.S.2d 74, 75 n.1 (1st Dep't 2009). And, under no reasonable view of the evidence could the jury have found that McGeachy committed criminally negligent homicide rather than first-degree manslaughter.

McGeachy's request for the criminally negligent homicide charge was based on his version of the events -- that "he did not think that the gun was loaded and that he "failed to perceive the risk of his actions of striking [Barrino] with what he thought was an unloaded gun, and his failure constituted a gross deviation from what a reasonable person would do in that situation." Dkt. 9-2 at 41. But, as the trial court

explained, it is not possible for McGeachy to have failed to perceive the risk of causing

Barrino's death, while believing, at the same time, that the gun could not fire off a shot;

there would have been no risk of causing death at all, much less an "unjustified risk"

that he failed to perceive, if McGeachy had indeed thought the gun was unloaded.  Dkt.

9-2 at 41-46.  Thus, the trial court concluded that a conviction for criminally negligent

homicide would be "unsubstantiated by the facts" and contrary to New York law.  *See*

*People v. Thomches*, 569 N.Y.S.2d 158, 159 (2d Dep't 1991) ("The defendant claimed at the

trial that the gun went off accidentally when it was thrown to him by the codefendant.

However, this version of the shooting, if credited, would only have supported an

acquittal on the basis of an accidental shooting."); *cf. People v. Poulin*, 71 N.Y.S.3d 227,

230 (3d Dep't 2018) (holding that a jury could reasonably convict defendant of *second-*

*degree manslaughter* because "accepting defendant's statement that he did not know that

the shotgun was loaded" supports the conclusion that defendant was aware of and

consciously disregarded a substantial and unjustifiable risk).  Because no reasonable

view of the evidence would have supported finding that McGeachy committed

criminally negligent homicide under New York law, McGeachy failed to establish his

entitlement to the lesser-included offense charge.

       Moreover, even if McGeachy were entitled to a jury charge for criminally

negligent homicide under New York law, McGeachy would be unable to make the

requisite showing that this failure "so infected the entire trial that [his] resulting

19

conviction violates due process." *Cupp*, 414 U.S. at 147.  Because the jury convicted McGeachy of first-degree manslaughter, even though the lesser-included second-degree manslaughter charge was also available, McGeachy could not possibly establish that the error in failing to give the criminally negligent homicide charge is anything more than harmless error.  *See Conroy v. Racette*, No. 14-CV-5832, 2017 WL 2881137, at *13 (E.D.N.Y. July 6, 2017) ("The Second Department explained that, under New York law, even where a trial court's failure to give a requested charge amounts to error, such error is harmless where the jury's findings on other counts indicate that the jury would not have reached a different conclusion even had the requested charge been given." (citing *People v. Rodriguez*, 946 N.E.2d 726, 729 (N.Y. 2011)).  The Appellate Division similarly implied that any error by the trial court would have been harmless by holding that McGeachy's challenge to the trial court's refusal to charge criminally negligent homicide was "foreclosed" by the jury's verdict finding him guilty of first-degree manslaughter, and by the jury's implicit rejection of the lesser-included offense of second-degree manslaughter that had been submitted to it.  *McGeachy*, 902 N.Y.2d at 187.  This rejection of the merits of McGeachy's claim warrants "substantial deference."  *Fischer*, 780 F.3d at 560.

Accordingly, McGeachy's lesser-included offense claim is without merit and must be denied.

c.      The Cross-Examination of the People's Witnesses

Nor is McGeachy entitled to habeas relief upon his claim that his constitutional right to confront witnesses was violated when the trial court (1) restricted his cross-examination of Barbara and Natasha regarding the knife that fell from Barrino's waistband after he was shot, and (2) denied him the opportunity to cross-examine Frazier using his mental health records.  McGeachy raised this claim on appeal and the Appellate Division rejected it as meritless, without any further justification.  *See McGeachy*, 902 N.Y.S.2d at 188 ("The defendant's remaining contentions are without merit.").  Because the Appellate Division decided McGeachy's claim on the merits, even though it did not articulate the rationale for rejecting it, this decision is entitled to substantial deference; this Court may not grant habeas relief unless the state court's disposition of the claim amounted to an "unreasonable application" of clearly established Supreme Court precedent.  *See Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001) (citing 28 U.S.C. § 2254(d)(1)).  It was certainly not unreasonable for the Appellate Division to reject both of McGeachy's arguments as meritless.  Nor can it be said that, if not for these two cross-examination limitations, McGeachy would have elicited testimony that would have "remove[d] a reasonable doubt that [already] existed in the record without it."  *Johnson*, 955 F.2d at 181 (citation omitted).

First, as to McGeachy's claim that the trial court improperly restricted his cross-examination of Barbara and Natasha as to Barrino's knife, McGeachy failed to

provide the trial court with a good faith basis for this cross-examination.  There was no

evidence that Barrino displayed or used a knife at any time during the incident, or that

Natasha and Barbara even knew about the knife.  Thus, the trial court properly

concluded that such questioning was not only irrelevant, but also would have called for

Barbara and Natasha to speak beyond their personal knowledge and to speculate as to

Barrino's state of mind.  Dkt. 9-3 at 88; *see also Fuller v. Gorczyk*, 273 F.3d 212, 222 (2d Cir.

2001) (rejecting a claim for habeas relief based on a cross-examination limitation

because the testimony intended to be elicited was neither probative nor relevant and the

witness lacked personal knowledge).  Moreover, it was stipulated to the jury that a

knife fell from Barrino's rear waistband soon after McGeachy shot him and fled, Dkt. 9-

2 at 34, and thus any possible error in limiting the cross-examination of Barbara and

Natasha about Barrino's knife was harmless.  *See Van Arsdall*, 475 U.S. at 684.

        Next, as to McGeachy's claim that he was denied the opportunity to cross-

examine Frazier with his mental health records, McGeachy fails to establish that "the

cross-examination of which he was deprived of was of a nature that was likely to affect

the result." *Brinson*, 547 F.3d at 396.  Defense counsel was aware at trial that the records

would not be available in time for cross-examination and agreed to proceed without

them.  Dkt. 8-3 at 132-35.  McGeachy's counsel conducted a thorough cross-examination

of Frazier regarding his mental health history, during which Frazier testified about his

history of bipolar disorder and schizophrenia, admitted that he sometimes hears voices

and stops taking his medications, and confirmed that he specifically took his medication the night of the incident.  Dkt. 8-4 at 131-34, 138-42, 146-47.  There was no argument raised that McGeachy's right to cross-examination was impeded by the absence of Frazier's records until after the verdict.  Because, as the trial court found and as the Appellate Division affirmed, there was no evidence that "the witness's psychiatric records would contain material that would have altered the jury's assessment of the witness," Dkt. 7-2 at 116, it was certainly not unreasonable to conclude that McGeachy's right to cross-examination was not impeded by the absence of Frazier's records.

Moreover, although Frazier's testimony was important to the prosecution's case, all other *Van Arsdall* factors weigh strongly in favor of holding that the absence of the records, even if erroneous, would be harmless -- substantial cross-examination of Frazier's mental health history was permitted, there was no evidence that the records would not have been cumulative of Frazier's testimony, and there was overwhelming evidence supporting the jury's verdict.  475 U.S. at 684; *see also Delio v. People of State of New York*, No. 02-CV-5258, 2003 WL 22956953, at *13 (E.D.N.Y. Oct. 21, 2003) (denying habeas relief for trial court's denial of defendant's cross-examination of victim with their mental health records because defense counsel already elicited this information from cross-examining the victim and other witnesses).

Accordingly, this claim provides no basis for habeas relief.

### d.    The Trial Court's Denial of a *Franks* Hearing

In his fourth claim for habeas relief, McGeachy argues that the trial court's denial of a hearing to controvert the search warrant that authorized the seizure of guns and ammunition from McGeachy's shed deprived him of a fair trial.  McGeachy argued that the affidavit prepared by Detective Perez in support of a search warrant included a false statement by Frazier that McGeachy ran back into his property after shooting Barrino before fleeing, as Frazier's statement contradicted the grand jury testimony of Natasha and Barbara that McGeachy immediately fled the scene.  Dkt. 2 at 4-5. McGeachy is not entitled to relief on this claim for two independent reasons.

First, the Appellate Division found that the trial court properly denied, without a hearing, McGeachy's motion to challenge the search warrant because McGeachy "failed to make the necessary substantial preliminary showing that the warrant was based upon an affidavit containing false statements made knowingly or intentionally, or with reckless disregard for the truth."  *McGeachy*, 902 N.Y.S.2d at 187–88 (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).  Because the Appellate Division reviewed this claim on the merits, its decision is entitled to "substantial deference."  *Fischer*, 780 F.3d at 560.  Moreover, McGeachy has failed to show that denial of the hearing "was contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d).  The trial court found that Detective Perez's affidavit was sufficient on its face, and prior to the evidence being introduced in

24

the People's rebuttal case, McGeachy's own testimony at trial confirmed that he went

back into his property after shooting Barrino.  Dkt. 8-5 at 73-74; Dkt. 9-1 at 13.  Thus, the

denial of a *Franks* hearing was fairminded and reasonable.

      Second, federal review of Fourth Amendment claims in habeas petitions

may only be undertaken in one of two instances, neither of which McGeachy has shown

to be applicable here.  *See Capellan*, 975 F.2d at 70.  McGeachy fails to establish that "the

state has provided no corrective procedures at all to redress the alleged fourth

amendment violations," as the Second Circuit has long held that New York's procedure

for litigating Fourth Amendment claims is facially adequate.  *Id.* at 70 n. 1 (collecting

cases); *Daily v. New York*, 388 F. Supp. 2d 238, 249 (S.D.N.Y. 2005) ("The State of New

York clearly has provided defendants . . . with the necessary corrective procedures

through Section 710 of the New York Criminal Procedure Law.").  Therefore, because

New York has provided a "corrective mechanism," McGeachy may only obtain habeas

relief if he can establish that he was "precluded from using that mechanism because of

an unconscionable breakdown in the underlying process."  *Ethridge*, 49 F.4th at 684.

      To establish an unconscionable breakdown, McGeachy would have to

show that the trial court and the Appellate Division "failed to conduct a reasoned

method of inquiry into relevant questions of fact and law," *Hicks*, 43 F. Supp. 3d at 231,

which is a "stringent standard," *Clanton v. LaClair*, No. 14-CV-4551, 2015 WL 13832649,

at *11 (S.D.N.Y. Nov. 4, 2015), *report and recommendation adopted*, 2019 WL 4688725

(S.D.N.Y. Sept. 25, 2019); *see also Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y.),

*aff'd*, 852 F.2d 59 (2d Cir. 1988) ("In short an unconscionable breakdown in the state's

process must be one that calls into serious question whether a conviction is obtained

pursuant to those fundamental notions of due process that are at the heart of a civilized

society.").  McGeachy has made no such showing here.

        The trial court considered McGeachy's claim, raised in his pre-trial

briefing, that Detective Perez's affidavit in support of the search warrant application

contained false statements.  Upon assessing the affidavit, the trial court concluded that

it was sufficient on its face, and that McGeachy failed to make the necessary substantial

preliminary showing that the affidavit contained false statements.  The trial court

allowed McGeachy to renew his motion after questioning the witnesses at trial, thereby

prohibiting the People from admitting the guns and ammunition into evidence in its

direct case.  Dkt. 7-2 at 89.  At trial, the trial court again denied McGeachy's request for a

hearing, reaffirming that the affidavit was sufficient on its face, that witness testimony

at trial had supported the truthfulness of statements contained in the affidavit, and

allowing the seized evidence only to be used for purposes of cross-examination.  Dkt. 8-

5 at 73-74.  McGeachy then sought review before the Appellate Division, which

affirmed the trial court's decision, with a brief explanation of its reasoning.  *See*

*McGeachy*, 902 N.Y.S.2d at 187–88.  Thus, there was no failure here "to conduct a

reasoned method of inquiry into relevant questions of fact and law." *Hicks*, 43 F. Supp. 3d at 231.

None of McGeachy's arguments demonstrate an "unconscionable breakdown" of process, but rather reflect "a mere disagreement with the outcome of a state court ruling[, which] is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72. Similarly, the fact that McGeachy was denied an evidentiary hearing prior to the trial court's determination that he failed to make the requisite showing that the affidavit contained false statements, as required by *Franks*, does not amount to an unconscionable breakdown. *See Clanton*, 2015 WL 13832649, at *12 (citation omitted).

Accordingly, because McGeachy was afforded the opportunity to litigate his Fourth Amendment claim, and because his claim was resolved by "reasoned method[s] of inquiry" within the state court system, McGeachy is not entitled to habeas review on this claim.

### e.    The Prosecutor's Misconduct in the Grand Jury

McGeachy's final claim is that he is entitled to habeas relief because of misconduct by the prosecutor in the grand jury, which consisted of (1) misleading the grand jury about whether Barrino was armed with a knife during the confrontation and (2) improperly admitting into evidence the guns and ammunition found in McGeachy's

shed.  Dkt. 2 at 57.  Claims of deficiencies in state grand jury proceedings, however, are

not cognizable in a habeas corpus proceeding in federal court.  *See Lopez*, 865 F.2d at 32.

Indeed, McGeachy's subsequent conviction forecloses any potential for

habeas relief on this claim.  *Id.* at 32-33 (rejecting a collateral attack of state grand jury

proceedings in federal court because the petit jury convicted defendant at trial,

rendering the error, if any, before the grand jury harmless); *see also Mechanik*, 475 U.S. at

70 ("[T]he petit jury's subsequent guilty verdict means not only that there was probable

cause to believe that the defendants were guilty as charged, but also that they are in fact

guilty as charged beyond a reasonable doubt.").  Thus, even if, as McGeachy alleges, the

prosecutor misled the grand jury and admitted evidence that was indeed highly

prejudicial, such prosecutorial misconduct would be harmless because a petit jury

found McGeachy guilty of first-degree manslaughter.

McGeachy is therefore not entitled to relief on this claim.

### CONCLUSION

McGeachy has failed to show a basis for relief under 28 U.S.C. § 2254.

Accordingly, his habeas petition is denied.  Additionally, I decline to issue a certificate

of appealability because McGeachy has not made a substantial showing of the denial of

a constitutional right.  *See* 28 U.S.C. § 2253.  Pursuant to 28 U.S.C. § 1915(a)(3), I certify

that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case.  The Clerk shall also mail copies of this memorandum decision and the judgment to McGeachy at his last known address.

SO ORDERED.

Dated:      New York, New York
            February 6, 2023

DENNY CHIN
United States Circuit Judge
Sitting By Designation